IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                        Criminal No. 18-279
                                          Civil No. 22-779
     v.                              ELECTRONICALLY FILED

TAUREAN POTTER,

        Defendant.

**MEMORANDUM OPINION DENYING DEFENDANT TAUREAN POTTER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN CUSTODY  (Doc. 234)**

Pending is Defendant Taurean Potter's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Section 2255 Motion"). (Doc. 234).

I.      **BACKGROUND**

On October 16, 2018, Defendant, and two co-defendants, Dylan Main ("Main") and Anthony Washington ("Washington"), were charged in a 3-count Indictment.  (Doc. 3).

Count 1 of the Indictment charged the 3 defendants with conspiracy to distribute, and possess with intent to distribute, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.  (*Id.*).

Count 2 of the Indictment charged Defendant with possession with intent to distribute and distribute cocaine on or about October 14, 2017, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (*Id.*).

Count 3 of the Indictment charged the 3 defendants with possession with intent to distribute and distribution of a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, on or about February 16, 2018, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Title 18 U.S.C. § 2.  (*Id.*).

On October 26, 2018, Defendant pleaded not guilty to the charges filed against him in the Indictment.  (Doc. 38).

On June 7, 2019, the Government filed a motion to dismiss Count 3 of the Indictment as to Defendant.  (Doc. 154).

On June 10, 2019, the Court granted the Government's motion, and dismissed Count 3 of the Indictment as to Defendant.  (Doc. 157).

Defendant's jury trial on the two remaining counts against him commenced on June 11, 2019.  (Doc. 175).

On June 13, 2019, the jury returned a guilty verdict against Defendant as to both Count 1 and Count 2 of the Indictment.  (Doc. 188).

On October 31, 2019, Defendant was sentenced to 180 months' imprisonment and 6 years supervised release at each of Counts 1 and 2, to be served concurrently.  (Doc. 214).  This sentence was a substantial downward variance from the advisory sentencing guidelines imprisonment range applicable to Defendant for these crimes, which was 262-327 months' imprisonment.  (Doc. 204, ¶ 70).

On November 13, 2020, the United States Court of Appeals for the Third Circuit affirmed the Court's October 31, 2019 Judgment Order in an unpublished Opinion.  (Doc. 230).

Defendant filed a petition for writ of certiorari, which was dated April 9, 2021, on April 15, 2021.[1]  The petition was denied on May 24, 2021.  *Potter v. U.S.*,  141 S. Ct. 2689 (2021).

On May 27, 2022, Defendant filed his pending Section 2255 Motion and Memorandum of Law in Support of Relief Pursuant to 28 U.S.C. § 2255.  (Doc. 234, Doc. 235).

On June 2, 2022, the Court issued a Miller Notice and Order, ordering Defendant to: "file his 'Statement of Intent' on or before July 5, 2022, setting forth his intention to have his [Section 2255]  motion ruled upon as filed (and lose his ability to file a second or successive petitions absent certification by the Court of Appeals), or withdraw his motion, in which case he may file one all-inclusive § 2255 petition subject, however, to the one-year from final judgment statutory period prescribed by AEDPA for Section 2255 petitions."  (Doc. 237).

Defendant failed to file a Statement of Intent as ordered.  Accordingly, on July 18, 2022, this Court issued an Order that stated that it would rule on Defendant's Section 2255 Motion as filed, and ordered the Government to file a response to Defendant's Section 2255 Motion.  (Doc. 240).

On August 17, 2022, the Government filed its Response in Opposition to Defendant's Motion under Section § 2255 to Vacate, Set Aside, or Correct Sentence.  (Doc. 241)

On September 6, 2022, Defendant filed a "Response to the Government's Motion in Opposition to Relief Pursuant to 28 U.S.C. § 2255" ("Defendant's First Reply Brief").  (Doc. 242).  Defendant's First Reply Brief was signed on August 29, 2022, and contains as an exhibit "Taurean Potter's Affidavit in Support of Response to the Government's Motion in Opposition to Relief Pursuant to 28 U.S.C. § 2255" dated August 28, 2022, and a certificate of service dated August 29, 2022.  (*Id*. at 13-15).

---

[1] *Potter v. U.S.*, No. 20-7882 (S. Ct).

On September 12, 2022, Defendant again filed a Response to the Government's Motion in Opposition to Relief Pursuant to 28 U.S.C. § 2255" ("Defendant's Second Reply Brief"). (Doc. 243).  Defendant's Second Reply Brief was signed on August 31, 2022, and contained 2 exhibits: (1) "Taurean Potter's Affidavit in Support of Response to the Government's Motion in Opposition to Relief Pursuant to 28 U.S.C. § 2255" dated August 31, 2022; and (2) an Outgoing Special Mail Receipt dated September 1, 2022.  (*Id*. at 13, Doc. 243-1, Doc. 243-2).

Defendant's First Reply Brief (Doc. 242) and Defendant's Second Reply Brief (Doc. 243) are identical other than: (1) the dates of the reply briefs and the attached Affidavits; and (2) the Outgoing Special Mail Receipt being attached to Defendant's Second Reply Brief and not attached to Defendant's First Reply Brief.  Collectively, the 2 reply briefs will be referred to herein as "Defendant's Reply Briefs."

Accordingly, Defendant's Section 2255 Motion has been fully briefed, and is ripe for adjudication.

## II.      STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code ("Section 2255") provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Whether to conduct a hearing with respect to a motion brought pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") is within the sound discretion of the District Court.  *U.S. v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008); *U.S. v. Day*, 969 F.2d 39, 41 (3d Cir. 1992) (*quoting*

*Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).  In exercising that

discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are

clearly frivolous on the basis of the existing record.  Further, the Court must order an evidentiary

hearing to determine the facts unless the motion and files and records of the case show

conclusively that the movant is not entitled to relief."  *Day*, 969 F.2d at 41-42 (citation omitted).

*See also* Rules Governing Section 2255 Proceedings, Rules 4 and 8.

The Court must view the factual allegations in the light most favorable to the Petitioner.

*Gov't of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994) (district court erred

in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective

assistance of counsel) (subsequent history omitted).  However, a Section 2255 Motion may be

dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle Petitioner to

relief, or (2) the allegations cannot be accepted as true because they are contradicted by the

record, inherently incredible, or conclusions rather than statements of fact.  *U.S. v. McCoy*, 410

F.3d 124, 134 (3d Cir. 2005) (citations omitted).

## III.     DISCUSSION

Defendant asserts three claims (and additional sub-claims) in support of his Section 2255

Motion.

First, Defendant argues that he was denied his right to effective assistance of counsel,

under the Sixth Amendment to the United States Constitution ("Sixth Amendment") when,

during Defendant's jury trial, trial counsel, Robert Mielnicki, Esquire ("Attorney Mielnicki")

failed to: (1) make proper objections with respect to the testimony of Pennsylvania Office of

Attorney General ("OAG") Special Agent Sean Kirley ("Special Agent Kirley") that as part of an

OAG investigation, the OAG was "not directly" able to purchase cocaine from Defendant on

February 16, 2018; (2) impeach Special Agent Kirley regarding his "not directly" testimony with the testimony of Government witness, co-defendant Washington, who testified at Defendant's trial that Defendant was not involved when Washington sold cocaine to OAG Special Agent Scott Patterson "(Special Agent Patterson") on February 16, 2018, or otherwise adequately cross-examine Special Agent Kirley about his "not directly" testimony; and (3) call Defendant's brother, Jeremy Kinney ("Kinney"), as an alibi witness at Defendant's trial with respect to Special Agent Patterson's purchase of cocaine on October 14, 2017.

Second, Defendant contends that he was denied his right to due process under the Fifth Amendment to the United States Constitution ("Fifth Amendment") because the Government committed prosecutorial misconduct during Defendant's trial when it permitted its witness, Special Agent Kirley, to testify falsely (Special Agent Kirley's "not directly" testimony), and did not correct Special Agent Kirley's testimony, which the Government knew was false in light of co-defendant Washington's testimony that Defendant was not involved when Washington sold cocaine to Special Agent Patterson on February 16, 2018.

Third, Defendant posits that he was denied his right to effective assistance of counsel under the Sixth Amendment when Attorney Mielnicki failed to object to the Government's prosecutorial misconduct with respect to Special Agent Kirley's "not directly" testimony.

A. **Defendant's 6th Amendment Ineffective Assistance of Counsel Claim Based Upon Attorney Mielnicki's Failure to: (1) Properly Object to Special Agent Kirley's "Not Directly" Testimony; (2) Impeach Special Agent Kirley Regarding His "Not Directly" Testimony With Co-Defendant Washington's Contradictory Testimony, or Otherwise Adequately Cross-Examine Special Agent Kirley; and (3) Call Defendant's Brother, Jerome Kinney, as an Alibi Witness at Defendant's Trial Concerning the Events of October 14, 2017**

As explained by the United States Supreme Court in *Cullen v. Pinholster*, 563 U.S. 170

(2011):

> In *Strickland* [v. *Washington*, 466 U.S. 668 (1984),] this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S.Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S.Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*, at 689, 104 S.Ct. 2052.
>
> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," *ibid.,* the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," i*d.,* at 690, 104 S.Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.*, at 688, 104 S.Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.*, at 690, 104 S.Ct. 2052.
>
> The Court also required that defendants prove prejudice. *Id.*, at 691–692, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter, sup*ra, at 112, 131 S.Ct., at 791.

*Cullen*, 563 U.S. at 189–90.

Thus, it is well established that to establish an ineffective assistance of counsel claim in violation the Sixth Amendment, a defendant must demonstrate that (1) his counsel's performance was deficient; and (2) his counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Further, it is well established that to establish deficient performance, a defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In reviewing counsel's performance, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689-90 (internal quotation marks omitted). Accordingly, defense counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-691.

Here, for the reasons detailed below, based on the files and records of this case, Defendant has not established a violation of his Sixth Amendment right to effective assistance of counsel based upon a failure by Attorney Mielnicki to: (1) make proper objections with respect to the testimony of Special Agent Kirley that the OAG was "not directly" able to purchase cocaine from Defendant on February 16, 2018; (2) impeach Special Agent Kirley regarding his "not directly" testimony with the testimony of Washington, who testified at Defendant's trial that Defendant was not involved in the February 16, 2018 sale of cocaine to Special Agent Patterson at the Hazel Bar, or otherwise adequately cross-examine Special Agent Kirley about his "not directly" testimony; and (3) call Defendant's brother, Jeremy Kinney, as an alibi witness

at Defendant's trial with respect to Special Agent Patterson's purchase of cocaine at the Main

Street Bar on October 14, 2017.

> 1. **Defendant has not established that Attorney Mielnicki failed to properly object to Special Agent Kirley's "not directly" testimony at Defendant's trial such that Attorney Mielnicki's performance at Defendant's trial was deficient**

At the heart of Defendant's Section 2255 Motion is the following exchange that took

place during the Government's direct examination of Special Agent Kirley, who was the lead

investigator of the OAG's investigation of Defendant for trafficking drugs in bars in Ellwood

City, Pennsylvania:

> Q. Now, to whom did you direct the CI to introduce Special Agent Patterson on that night? Who did you tell him to introduce him to?
>
> A. To Taurean Potter.
>
> Q. Now, was there any purchase made from Mr. Potter that night?
>
> A. Not directly.
>
> Mr. Mielnicki: I would object, Your Honor, to the characterization, not directly. He knows what he knows.
>
> THE COURT: I'll overrule the objection. That's his answer.
>
> Mr. Mielnicki: Okay.

(Doc. 221 at 97-98).

Defendant argues that Attorney Mielnicki rendered ineffective assistance of counsel

when he failed to object to Special Agent Kirley's "not directly" testimony on the bases that:

(1) Special Agent Kirley lacked personal knowledge/was speculating; and (2) Special Agent

Kirley's "not directly" testimony was inadmissible Fed. R. Evid. ("Rule") 404(b) "other acts"

evidence.

For the following reasons, the Court finds that Attorney Mielnicki's conduct with respect to objecting to Special Agent Kirley's "not directly" testimony did not fall below an objective standard of reasonableness, *i.e.*, was not deficient.

    a.  *Attorney Mielnicki objected to Special Agent Kirley's "not directly" testimony based upon Special Agent Kirley's lack of personal knowledge/speculation at Defendant's trial*

With respect to Special Agent Kirley's "not directly" testimony, Defendant first argues that Attorney Mielnicki's conduct at trial was deficient in that: "While counsel objected to the characterization, he certainly should have objected to Kirley testifying about an incident that he did not observe or participate in." (Doc. 235 at 6).

Contrary to Defendant's argument, the Court, who served as the trial judge in this case, understood/interpreted Attorney Mielnicki's objection to Special Agent Kirley's "not directly" testimony to be an objection brought pursuant to Federal Rule of Evidence 602,[2] based upon Special Agent Kirley's lack of personal knowledge/speculation, and ruled accordingly.[3]  *See*

---

[2] Federal Rule of Evidence 602 provides in relevant part: " A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.

[3] Attorney Mielnicki had made similar objections earlier with respect to Special Agent Kirley's testimony on direct examination:

    A.  That is – well, the scale says 1.5 gross grams of cocaine that was purchased from Taurean Potter.

    Mr. Mielnicki: I'm going to object to that characterization.  I don't think he has firsthand knowledge that this is the cocaine handed to him by Patterson (sic.).

    The Court: Sustained.

. . .

    A.  . . . So the pocket that he [Special Agent Patterson] pulled the two bags out of was the same cocaine that was handed to him by Taurean Potter.

    Mr. Mielnicki:  I'm going to object.  He doesn't have firsthand knowledge of this.

    The Court:  You can handle that on cross-examination.  Overrule the objection.

10

*Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x. 217, 224 n. 7 (3d Cir. Jul. 5, 2012) (explaining, "questions calling for speculation" are "prohibited by Rule 602"). Thus, because this Court understood/interpreted Attorney Mielnicki's objection to Special Agent Kirley's "not directly" testimony to be an objection pursuant to Rule 602, based upon a lack of personal knowledge/speculation, Defendant has not, and cannot, show that Attorney Mielnicki's representation fell below an objective standard of reasonableness, *i.e.*, was deficient, due to Attorney Mielnicki's failure to object to Special Agent Kirley's "not directly" testimony based upon a lack of personal knowledge/speculation on the part of Special Agent Kirley.

> b. *Defendant has failed to establish that Attorney Mielnicki's failure to make a Rule 404(b) objection to Special Agent Kirley's "not directly" testimony at trial was deficient*

With respect to Special Agent Kirley's "not directly" testimony, Defendant further argues that Attorney Mielnicki's conduct at trial was deficient in that he should have objected to this testimony as being inadmissible under Federal Rule of Evidence 404(b). (Doc. 235 at 9). "[T]his was improper evidence and testimony "other act," evidence that was admitted, under Federal Rule of Evidence 404(b)." (*Id.*). (*See also id.* at 10) ("Counsel's failure to properly object prevented the Court from determining whether the probative value of the evidence being introduced outweighed its potential for unfair prejudice under Rule 403"); (*id.*) ("Kirley's answer

---

(Doc. 221 at 93-94). Additionally, when it was time for Attorney Mielnicki to cross-examine Special Agent Kirley, the Court instructed: "In light of the objections before, include what it based on personal knowledge and what isn't." (*Id.* at 102).

A letter from Attorney Mielnicki to Defendant dated December 3, 2020, which Defendant attached as an exhibit in support of his Section 2255 Motion, also indicates that Attorney Mielnicki's objection at trial was one of speculation/lack of personal knowledge:

> I saw the opinion in your case. I wish to explain my objection that was brought up in that opinion. I knew that agent's answer was improper, but my objection was formed in the matter of seconds. The "he knows what he knows" was my way of saying this guy is speculating about what transpired that he never saw and does not know for certain.

(Doc. 235-4 at 1-2).

when asked whether Potter sold cocaine to Patterson in February 2018 unfairly suggested that Kirley knew of other evidence of guilt not disclosed to the jury"). Rule 404(b) provides, in pertinent part: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

This Rule 404(b) "deficiency" argument by Defendant fails for three reasons.

First, in its Opinion affirming this Court's judgment of conviction as to Defendant, *U.S. v. Potter*, 834 F. App'x. 719 (3d Cir. Nov. 13, 2020),[4] the United States Court of Appeals for the Third Circuit already determined that Special Agent Kirley's "not directly" testimony was not Rule 404(b) evidence:

> Potter argues that Kirley's answer when asked whether Potter sold cocaine to Patterson in February 2018 unfairly suggested that Kirley knew of other evidence of guilt not disclosed to the jury. Potter further says that he was not involved in the February 2018 sale and that Washington's testimony to that effect makes Kirley's statement evidence of another crime or of propensity to commit a crime. By Potter's lights, the District Court was therefore obligated to weigh the probative value of the statement against its prejudicial effect, which it did not do. At a minimum, he says, there should have been a limiting instruction telling the jury what it could and could not consider the evidence for, given the restrictions of Rule 404(b). Potter also argues that the government breached its duty to correct materially false testimony by letting Kirley's testimony stand, thus violating due process.
>
> The fundamental problem for Potter in that entire line of argument is that Agent Kirley's ["not directly"] testimony regards an act intrinsic to the charged conspiracy, not evidence of other acts. Following the objection, Kirley provided further context to his "[n]ot directly" statement, explaining how he witnessed Washington approach Patterson and – seemingly without any introduction or other comment – hand him drugs. (App. at 211.) This supports an inference that Potter had communicated to Washington that he should sell cocaine to Patterson. The February 2018 interactions were thus used to directly prove the charged conspiracy and so constitute intrinsic evidence. *See Cross*, 308 F.3d at 320. To the extent Potter argues that Kirley's testimony is not intrinsic evidence because it contradicts Washington's testimony, contradictory evidence presents a weight-of-the-evidence

---

[4] This Opinion is docketed in Defendant's criminal case at Doc. 203-1. Forthwith, the Court will reference Doc. 230-1 when citing to the Court of Appeals for the Third Circuit's Opinion.

question for the jury, not an admissibility question for the judge. [footnote 5].
*United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014).

[footnote 5: "The point that Potter was behind the sale of cocaine to Patterson on that occasion, even if not the direct source, had already been alluded to earlier in the record. (See App. at 92 (The government: 'Ultimately, were you able to physically get cocaine directly from Taurean Potter?' Agent Patterson: 'No.')."]

(Doc. 230-1 at 8-9).  (*See also id.* at 9) (concluding, "the District Court did not commit error, let alone plain error, in failing to sustain Potter's [Rule 404(b)] evidentiary objection").

"Many cases have held that Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'"  *U.S. v. DeRewal*, 10 F.3d 100, 105 (3d Cir. 1993) (citation omitted).  *See also Gov't. of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) (explaining that a section 2255 petition may not "be used to relitigate matters decided adversely on appeal"); *U.S. v. Johnson*, No. 96-6190, 1997 WL 2658, at *1 (10th Cir. Jan. 2, 1997) (denying a certificate of appealability because "[w]e cannot again review this claim simply because it has been recast in the clothing of an ineffective assistance of counsel claim"); *U.S. v. Kelly*, Crim. 08-374, 2019 WL 3426077, at *5 (W.D. Pa. July 30, 2019) (concluding that because the defendant was "again challenging the validity of the grand jury and wiretaps in his § 2255 motion (albeit sometimes styled as ineffective assistance of counsel claims)," after "the court of appeals rejected [the defendant's] challenges to the grand jury and wiretaps, this court will not address them").  Accordingly, because the Court of Appeals for the Third Circuit has already determined, on Defendant's direct appeal, that Special Agent Kirley's "not directly" testimony was not inadmissible Rule 404(b) "other acts" evidence, the Court need not relitigate this issue on collateral review.

Second, the Court further finds, for the reasons set forth above by the Court of Appeals, *supra*., that Special Agent Kirley's "not directly" testimony was evidence of an act intrinsic to

the drug conspiracy charged in Count 1 of the Indictment, and was not "other acts" evidence that was inadmissible under Rule 404(b). Accordingly, had Attorney Mielnicki made a Rule 404(b) objection to Special Agent Kirley's "not directly" testimony, the Court would have overruled the objection.

Third, the Court finds that had Attorney Mielnicki: (a) made a Rule 404(b) objection as to Special Agent Kirley's "not directly" testimony, and then, once overruled; (b) followed with a Rule 403 "unfairly prejudicial" objection, arguing that the testimony unfairly suggested that Kirley knew of other evidence of guilt not disclosed to the jury, the Court would have overruled said objection as well. As determined by the Court of Appeals for the Third Circuit with respect to Defendant's direct appeal, *supra.*, in response to Defendant's argument that Special Agent "Kirley's answer when asked whether Potter sold cocaine to Patterson in February 2018 unfairly suggested that Kirley knew of other evidence of guilt not disclosed to the jury because Special Agent Kirley's "not directly" testimony was evidence of "an act intrinsic to the charged conspiracy, not evidence of other acts," it did not unfairly suggest that Special Agent Kirley knew of other evidence of guilt not disclosed to the jury. " (Doc. 230-1 at 8).

> **2. Defendant has not established that Attorney Mielnicki's failure to impeach Special Agent Kirley regarding his "not directly" testimony with co-defendant Washington's testimony that Defendant was not involved in the February 16, 2018 sale of cocaine to Special Agent Patterson at the Hazel Bar, or to otherwise cross-examine Special Agent Kirley about his "not directly" testimony, was deficient**

Defendant also argues that Attorney Mielnicki rendered ineffective assistance of counsel when he failed to impeach Special Agent Kirley regarding his "not directly" testimony with co-defendant Washington's testimony that Defendant was not involved in Washington's February 16, 2018 sale of cocaine to Special Agent Patterson at the Hazel Bar, and failed to cross-examine Special Agent Kirley as to his "not directly" testimony.

14

The Court finds that Attorney Mielnicki's tactical decision not to attempt to impeach Special Agent Kirley regarding his "not directly" testimony with co-defendant Washington's testimony that Defendant was not involved in Washington's sale of cocaine to Special Agent Patterson on February 16, 2018 at the Hazel Bar, or to further cross-examine Special Agent Kirley as to his "not directly" testimony, did not fall below an objective standard of reasonableness, *i.e.*, was not deficient.

Specifically, Attorney Mielnicki reasonably could have made the tactical decision not to attempt to impeach Special Agent Kirley's "not directly" testimony with co-defendant Washington's testimony that Defendant was not involved in the February 16, 2018 sale of cocaine to Special Agent Patterson, or to further cross-examine Special Agent Kirley as to his "not directly" testimony, and instead to focus the jury's attention on how the Government had limited evidence to corroborate the OAG special agents' testimony as to what occurred on February 16, 2018. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.") (*citing Strickland*, 466 U.S. at 690). Especially since attempting to impeach Special Agent Kirley's "not directly" testimony with Washington's testimony, or to otherwise cross-examine Special Agent Kirley about his "not directly" testimony, would have enabled the jury to again hear Special Agent Kirley's credible testimony of the events of February 16, 2018, namely that the goal on February 16, 2018, at the Main Street Bar was to get Defendant to sell cocaine to Special Agent Patterson, that Special Agent Patterson was not able to purchase cocaine from Defendant, but then, a short time later, at the Hazel Bar, Special Agent Kirley witnessed Washington, Defendant's friend, "approach Patterson and – seemingly without any introduction or other comment – hand him drugs," which "support[ed] an

15

inference that Potter had communicated to Washington that he should sell cocaine to Patterson."

([Doc. 230-1 at 8-9](#)).

### 3. Defendant has not established that Attorney Mielnicki's failure to call Defendant's brother, Jeremy Kinney, as an alibi witness at Defendant's trial, was deficient

Defendant also argues that Attorney Mielnicki rendered ineffective assistance of counsel, in violation of Defendant's rights under the Sixth Amendment, when Attorney Mielnicki failed to call Defendant's brother, Jeremy Kinney ("Kinney"), as an alibi witness at Defendant's trial "as it related to the sale of cocaine that allegedly took place in a bathroom on October 14, 2017 at the main street bar."  ([Doc. 235 at 11](#)).

Specifically, Defendant contends:

> Both counsel and Mr. Potter had agreed that Mr. Kinney should be called as a witness.  Mr. Kinney had been subpoenaed, and was present.  However, at the last-minute defense counsel changed courses.  Here, Mr. Potter wanted his brother called and he attested that had Mr. Kinney been permitted to testify he would have testified that Petitioner never went into the bathroom with Agent Patterson. Furthermore, he would have testified that it was him and not Petitioner that the agent was speaking to and approached in the bathroom requesting to buy cocaine.

(*Id.*).

In support thereof, Defendant has submitted: (1) a written statement from Kinney "[t]o whom it may concern" that was "[s]worn to and subscribed before" a Notary Public on June 4, 2020 ([Doc. 235-3](#)) ("Kinney's 2020 Statement");[5] and (2) Defendant's "Affidavit in Support of Relief Pursuant to 28 U.S.C. § 2255" ([Doc. 235-2](#)).  Defendant's trial concluded on June 13, 2019.  ([Doc. 188](#)).

Kinney's 2020 Statement reads:

> I am Jeremy Kinney brother of Taurean Potter.  I was with my brother Taurean on the night in question at Main Street Bar and Grill. We were there to pick up food that we ordered for take out, the food was not ready so we ordered a beer while we

---

[5]Kinney's 2020 Statement also has a date of April 1, 2020 listed on the top of the document.  ([Doc. 235-3](#)).

waited.  Joey Germanoski was at the bar with another man.  They sent both of us shots,  Then Joey walked over and asked Taurean if he had any coke.  Taurean said no.  Joey went and sat back down in his seat.  Our food came out so I went to the bathroom, came back out paid for our food and left to head back to Taurean's Apartment.  I specifically remember going into the bathroom because the man sitting with Joey followed me into the bathroom and asked me for coke too.  I remember this night because it's not everyday a stranger walks into a bathroom and so openly asks you for drugs.  That day also stands out in my head because Taurean was later picked up and charged, so it's something I think about often. [The last 3 ½ lines of the statement are redacted].

(Doc. 235-3).

Defendant's Affidavit states, in relevant part:

I asked that he [Attorney Mielnicki] call Mr. Kinney as a witness for the defense.  My attorney told me that we were going to do so.  He never did that.  This was important to me as Mr. Kinney would have testified that I never went into a bathroom with Mr. Patterson.  This supported my defense in this case.  Counsel agreed that Mr. Kinney was an important witness.  He was present and ready to testify but was never called despite the fact that I told counsel to do so.

(Doc. 235-2).

Having reviewed Kinney's post hoc 2020 Statement and Defendant's post hoc, self-serving, Affidavit, the Court finds, for the following reasons, that Defendant has not established that any failure on the part of Attorney Mielnicki to call Kinney as a witness at Defendant's trial fell below an objective standard of reasonableness, *i.e.*, was deficient, when Attorney Mielnicki failed to call Kinney as an alibi witness at Defendant's trial "as it related to the sale of cocaine that allegedly took place in a bathroom on October 14, 2017 at the main street bar."  (Doc. 235 at 11).

First, Kinney's 2020 Statement does not state that Kinney had been subpoenaed, and was present and prepared to testify consistent with the contents of his 2020 Statement, at Defendant's trial.  *See U.S. v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988) (affirming that defense counsel's failure to call a named individual as a witness did not fall below the standard of

effective assistance of counsel where, in part, there was no evidence in the record which established that the named individual would testify in the defendant's trial).  Alone, Defendant's post hoc, self-serving, Affidavit is insufficient independent evidence that establishes that Kinney had been subpoenaed and was present and prepared to testify consistent with the contents of his 2020 Statement.[6]

Second, Kinney's 2020 Statement is ambiguous in that it does not provide any indication as to what date Kinney is referencing when he states that he "was with [his] brother Taurean on the night in question at Main Street Bar and Grill."  (*Id.*).  The absence of a date from Kinney's statement is critical because there are two "nights in question" where Defendant's actions at the Main Street Bar are at issue: (1) October 14, 2017; and (2) February 16, 2018.  Thus, while Defendant claims that Kinney is referring to October 14, 2017, Mr. Kinney's 2020 Statement does not so state, and could be referring to October 14, 2017 or February 16, 2018.[7]

Third, if Kinney had been subpoenaed, and was present and willing to testify at Defendant's trial consistent with his 2020 Statement, and the "night in question" referenced in Kinney's 2020 Statement is October 14, 2017, then, to the extent that Defendant asserts that Kinney would have testified that on October 14, 2017, Defendant did not speak to Special Agent Patterson and never went into the bathroom with Special Agent Patterson, Kinney's 2020

---

[6] As explained in greater detail, *infra.*, Kinney was listed as a defense witness on Defendant's sealed witness list, but said document does not indicate that Kinney was expected to testify about October 14, 2017.  (Doc. 119).

[7] If Kinney's 2020 Statement was in reference to events on February 16, 2018, which would be consistent with Defendant's sealed Witness List (*id.*), as explained in greater detail, *infra.*, then Kinney's statement does not provide an alibi for Defendant, or other exculpatory evidence given that the facts contained in Kinney's 2020 Statement support Special Agent Patterson's version of the events of February 16, 2018 at the Main Street Bar, and Attorney Mielnicki cannot be found to have rendered ineffective assistance of counsel for making the decision not to call, as a witness, an individual who would corroborate Special Agent Patterson's testimony as to what occurred on February 16, 2022.  Specifically, Special Agent Patterson testified that on February 16, 2018, at the Main Street Bar, the CI had been instructed to purchase cocaine from Defendant, but that although Special Agent Patterson, the confidential informant, and Defendant engaged in conversation about purchasing cocaine, they were not able to physically purchase cocaine from Defendant.

Statement does not state either that Defendant did not speak to Special Agent Patterson (to the contrary, Kinney's statement indicates that Special Agent Patterson and Defendant spoke), or that Defendant never went into the bathroom with Special Agent Patterson.

Fourth, if Kinney had been subpoenaed, and was present and prepared to testify at Defendant's trial consistent with his 2020 Statement, and the "night in question" referenced in Kinney's 2020 Statement is October 14, 2017, then crucially what is missing from Defendant's Section 2255 Motion is sufficient evidence that Attorney Mielnicki knew at the time of Defendant's trial in June, 2019, that Kinney was willing to testify at Defendant's trial to the facts stated in Kinney's 2020 Statement as they related to October 14, 2017, and did not call Kinney as an alibi witness at Defendant's trial.

Again, alone, Defendant's post hoc, self-serving Affidavit is insufficient evidence to establish that Defendant informed Attorney Mielnicki that Kinney was willing to testify at Defendant's trial to the facts stated in Kinney's 2020 Statement as they relate to the sale of cocaine in the bathroom of the Main Street Bar on October 14, 2017.

Moreover, contrary to Defendant's post hoc, self-serving Affidavit, Defendant's sealed witness list (Doc. 119), which was filed on May 10, 2019, listed Kinney as a witness who was expected to testify with respect to the events that occurred on February 16, 2018 only.

Also contrary to Defendant's post hoc, self-serving Affidavit are the following answers by Defendant at his sentencing hearing, made under oath in response to the Court's plain and unambiguous questions, which support that Defendant did not tell Attorney Mielnicki prior to his trial that Kinney had information related to the sale of cocaine in the Main Street Bar bathroom on October 14, 2017:

THE COURT: Are you satisfied with the service and representation of your attorney?

> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has he done everything you've asked him to do?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything he's done you believe he should not have done?
>
> THE DEFENDANT: No, sir.

(Doc. 223 at 17-18).  Defendant's contention that he did not understand that these questions by the Court were not limited to defense counsel's service and representation relevant to Defendant's sentence simply is not credible.

Fifth, if there was competent evidence of record to support that Kinney had been subpoenaed, and was present and willing to testify at Defendant's trial consistent with his 2020 Statement, that the 2020 Statement relates to October 14, 2017, and Attorney Mielnicki knew that Kinney was willing to testify at Defendant's trial to the facts stated in Kinney's 2020 Statement, and did not call Kinney as an alibi witness, the Court still would not find Attorney Mielnicki's decision not to call Kinney as an alibi witness deficient given Kinney's susceptibility to impeachment for bias as Defendant's brother.  As explained by the United States District Court for the Middle District of North Carolina in *Straite v. United States*, Crim. No. 111321, 2022 WL 4370458, at *6 (M.D.N.C. Mar. 28, 2022*), report and recommendation adopted,* 2022 WL 4367642 (M.D.N.C. Sept. 21, 2022):

> "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [courts] must afford enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (internal quotation marks and ellipsis omitted). Here, that balance tilted decidedly against calling Petitioner's mother as an alibi witness, due to her susceptibility to impeachment for bias, *see, e.g., Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("The partiality of a witness ... is always relevant as discrediting the witness and affecting the weight of h[er] testimony." (internal quotation marks omitted)); *United States ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1089 (N.D. Ill. 1999) (recognizing reasonableness of view that the

petitioner's "mother ... would not be credible alibi witness[ ], given [her] obvious personal interest in his acquittal"), which threatened to leave Petitioner with "an unsuccessful alibi defense [which] might well have had the unintended consequence of reinforcing the credibility of the government's chief witness[es]," *DiMattina v. United States*, 949 F. Supp. 2d 387, 411 (E.D.N.Y. 2013*); see also Stovall v. Tilton*, No. CV07-3105, 2011 WL 2939423, at *23 (C.D. Cal. June 10, 2011) (unpublished) ("A witness who appears ... biased and testifies to X may persuade the jury that not-X is true .... [C]ounsel could well decide not to call family members as witnesses because family members can be easily impeached for bias. [The p]etitioner's] counsel could have reasonably weighed the strength of the potential alibi defense supported only by [a family member's] testimony against the possible detrimental effect it would have on [the p]etitioner's case when attacked, and concluded that presenting such readily-attacked evidence created too great a risk that jurors would focus on the potential weakness of the defense theory, rather than on any weaknesses in the prosecution's case." (internal quotation marks and citations omitted), recommendation adopted, 2011 WL 2939420 (C.D. Cal. July 19, 2011) (unpublished).

*Straite¸* 2022 WL 4370458, at *6.

### 4.   Defendant has not established that he was prejudiced at his trial by any of Attorney Mielnicki's allegedly deficient conduct at trial

Further, the Court finds that Defendant has not shown, and cannot show, that there is a reasonable probability that, but for Attorney Mielnicki's allegedly deficient actions at trial, the results of Defendant's trial would have been different, *i.e.*, Defendant has not established that he was prejudiced at his trial by any of Attorney Mielnicki's allegedly deficient conduct at trial.

Specifically, regardless of whether: (1) the Court had struck Special Agent Kirley's "not directly" testimony, such that Special Agent Kirley's "not directly" testimony could not be considered by the jury; (2) Attorney Mielnicki had impeached Special Agent Kirley with Washington's testimony that Defendant was not involved in Washington's sale of cocaine to Special Agent Patterson on February 16, 2018; (3) Attorney Mielnicki had further cross-examined Special Agent Kirley as to his "not directly" testimony; and (4) Kinney had testified at Defendant's trial consistent with his 2020 Statement, and said statement was related to October 14, 2017, there was sufficient evidence introduced at trial for the jury to find beyond a

reasonable doubt that Defendant was guilty of conspiracy to distribute cocaine, in violation of 21

U.S.C. § 846, and was guilty of possession of cocaine with the intent to distribute, and

distribution, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).

With respect to Defendant's violation of 21 U.S.C. § 846, said evidence was:

(1) Washington's credible testimony that he was friends with Defendant and that Washington

occasionally purchased cocaine from Defendant and Main for resale when he was short on

supply; (2) Special Agent Patterson's credible testimony that on February 16, 2018, the

confidential informant ("CI") had been instructed to purchase cocaine from Defendant, Special

Agent Patterson, the CI, and Defendant had engaged in a discussion at the Main Street Bar about

purchasing cocaine, but Special Agent Patterson was unable to purchase the cocaine from

Defendant, and shortly thereafter, in the Hazel Bar, Washington, Defendant's friend, who was a

"perfect stranger" to Special Agent Patterson, handed Special Agent Patterson a plastic baggie

that contained a substance that subsequently was tested, and determined to be cocaine; and

(3) Special Agent Kirley's credible testimony that he observed Main and Washington walk into

the Hazel Bar together, where Main and then Washington went into the bathroom, Main exited

the bathroom and left the bar, and Washington approached Special Agent Patterson and handed

Special Agent Patterson a plastic baggie that contained a substance that subsequently was tested,

and determined to be cocaine.[8]  As explained by the Court of Appeals for the Third Circuit with

respect to this cocaine trafficking conspiracy: "A loose conspiracy is still a conspiracy."

(Doc. 230-1 at 13).

---

[8] It must also be noted that, in addressing Special Agent Kirley's "not directly" testimony, the Court of Appeals for
the Third Circuit emphasized: "The point that Potter was behind the sale of cocaine to Patterson on that occasion,
even if not the direct sources, had already been alluded to earlier in the record [by Special Agent Patterson]," when
in response to the question,"[u]ltimately, were you able to physically get cocaine directly from Taurean Potter,"
Special Agent Patterson answered, "[n]o."  (Doc. 230-1 at 9, n. 5).

With respect to Defendant's violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) on October 14, 2107, said evidence was: (1) Special Agent Patterson's credible testimony that, on October 14, 2017, after he was introduced to Defendant by the CI, Defendant sold Special Agent Patterson cocaine in a hand-to-hand exchange in a bathroom stall at the Main Street Bar for $80.00, and then, later in the evening, again sold Special Agent Patterson cocaine for $80.00 in a hand-to-hand exchange while the two men were at the bar; (2) the two plastic baggies of a substance which Special Agent Patterson gave to Special Agent Kirley upon departing from the Main Street Bar on October 14, 2017; the substances were tested and determined to be cocaine; (3) the photograph of Defendant that Special Agent Patterson took of Defendant in the Main Street Bar on October 14, 2017; and (4) Special Agent Patterson's identification of Defendant at trial as the person he interacted with at the Main Street Bar on October 14, 2017.

> **5. Defendant has not established that he was prejudiced with respect to his direct appeal because Attorney Mielnicki failed to properly preserve a Rule 404(b) evidentiary objection as to Special Agent Kirley's "not directly" testimony**

Defendant also contends that he has established the requisite prejudice required by *Strickland*, *supra*., because had Attorney Mielnicki preserved for appeal the Rule 404(b) issue Defendant now raises in his Section 2255 Motion, *see infra*., the evidentiary ruling would have been reviewed by the Court of Appeals for the Third Circuit under an abuse of discretion standard of review, as opposed to plain error review.

For the reasons set forth below, the Court disagrees, and finds that Defendant has not established that he was prejudiced with respect to his direct appeal because Attorney Mielnicki failed to properly preserve a Rule 404(b) evidentiary objection as to Special Agent Kirley's "not directly" testimony at trial.

First, Defendant's argument ignores, as explained in detail, *supra*., the analysis by the United States Court of Appeals for the Third Circuit with respect to Special Agent Kirley's "not direct" testimony and Rule 404(b), and the appellate court's ultimate finding that Special Agent's Kirley's "not directly" testimony was <u>not</u> inadmissible under Rule 404(b) because it "regard[ed] an act intrinsic to the charged conspiracy, not evidence of other acts."  (Doc. 220-1 at 8).  (*See also id*. at 9) (concluding, "the District did not commit error, let alone plain error, in failing to sustain Potter's evidentiary objection.").  Thus, regardless of the standard of review applicable, abuse of discretion or plain error, the Court of Appeals for the Third Circuit would have concluded that Special Agent Kirley's "not directly" testimony was not inadmissible as Rule 404(b) "other acts" evidence.

Second, regardless of Agent Kirley's "not directly" testimony, there was sufficient evidence, on plain error review, for the Court of Appeals for the Third Circuit to affirm this Court's judgment of conviction with respect to Defendant's conspiracy to distribute cocaine charge, said evidence being: (1) Washington's credible testimony that he was friends with Defendant and that Washington occasionally purchased cocaine from Defendant and Main for resale when he was short on supply; (2) Special Agent Patterson's credible testimony that on February 16, 2018, the CI had been instructed to purchase cocaine from Defendant, Special Agent Patterson, the CI, and Defendant had engaged in a discussion at the Main Street Bar about purchasing cocaine, but Special Agent Patterson was unable to purchase the cocaine from Defendant, and shortly thereafter, in the Hazel Bar, Washington, Defendant's friend, who was a "perfect stranger" to Special Agent Patterson, handed Special Agent Patterson a plastic baggie that contained a substance that subsequently was tested, and determined to be cocaine; and (3) Special Agent Kirley's credible testimony that he observed Main and Washington walk into

the Hazel Bar together, where Main and then Washington went into the bathroom, Main exited

the bathroom and left the bar, and Washington approached Special Agent Patterson and handed

Special Agent Patterson a plastic baggie that contained a substance that subsequently was tested,

and determined to be cocaine.[9]  Again, as explained by the Court of Appeals  with respect to this

cocaine trafficking conspiracy: "A loose conspiracy is still a conspiracy."  (Doc. 230-1 at 13).

**B.  Defendant's Fifth Amendment Due Process Rights Violation Claim Based on the Government Committing Prosecutorial Misconduct by Allowing False Testimony by Special Agent Kirley – the "Not Directly" Testimony – and Failing to Correct Said Testimony**

Related to Special Agent Kirley's "not directly" testimony, Defendant also asserts that

the Government violated his due process rights under the Fifth Amendment in that it engaged in

prosecutorial misconduct when "the Prosecutor permitted its witness Agent Kirley to testify

falsely [by testifying "not directly"], and failed to correct that testimony despite the prosecution

knowing full well that the testimony was false as demonstrated in the record."  (Doc. 235 at 17).

In support thereof, Defendant cites to Washington's testimony during the Government's

case-in-chief, when, in discussing his sale of cocaine to Special Agent Patterson on February 16,

2018, Washington testified that Defendant "had nothing to do with it" (Doc. 221 at 73).

(Doc. 235 at 20).  "Here this is no doubt that the Government knew this testimony to be false as

it was established by their own witness Mr. Washington."  (*Id*. at 20).

As recently summarized by the district court in *Chase v. Supt., State Correctional Instn.*

*at Albion*, Civ. No. 18-101, 2021 WL 5044833 (M.D. Pa. Sept. 8, 2021), *report and*

*recommendation adopted sub nom. Chase v. SCI Albion*, 2021 WL 5039029 (M.D. Pa. Oct. 29,

2021), *certificate of appealability denied sub nom. Chase v. Superintendent Albion SCI*, 21-3139,

---

[9] *Id.*

2022 WL 17075061 (3d Cir. Oct. 6, 2022):

> A "[government] may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). It is "fundamentally unfair to the accused where 'the prosecution knew, or should have known, of the perjury.'" *See Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). "The same is true when the [G]overnment, although not soliciting false evidence, allows it to go uncorrected when it appears at trial." *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). "[T]he conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Lambert,* 387 F.3d at 242 (quoting *Biberfeld*, 957 F.2d at 102). Moreover, to establish prosecutorial misconduct, a habeas petition must establish: "(1) [the Government's witness] committed perjury; (2) the [G]overnment knew or should have known of his perjury; (3) the testimony went uncorrected; and (3) there is any reasonable likelihood that the false testimony could have affected the verdict." *See United States v. John-Baptiste*, 747 F.3d 186, 210 (3d Cir. 2014) (citing *Lambert*, 387 F.3d at 242). Furthermore, it is well established that "[d]iscrepancy is (sic.) enough to prove perjury." *Lambert*, 387 F.3d at 249. "There are many reasons testimony may be inconsistent; perjury is only one possible reason. As we have explained above, in order to sustain a claim of constitutional error [the petitioner] must show that [the witness] actually perjured himself and the government knew or should have known of his perjury." *Id*.

*Chase,* 2021 WL 5044833, at *17.

For the two reasons set forth below, based on the files and records of this case, the Court finds that Defendant's contention that the Government committed prosecutorial misconduct in violation of Defendant's due process rights under the Firth Amendment fails.

First, in its Opinion affirming this Court's judgment of conviction as to Defendant, the Court of Appeals addressed, and denied, Defendant's Fifth Amendment due process argument based upon the Government breaching its duty to correct false testimony by letting Special Agent Kirley's "not directly" testimony stand on direct appeal: "The government also did not breach a duty to correct materially false testimony by letting the ["not directly"] testimony stand because there is no indication that Kirley's testimony was false or that the government had reason to think it was." (Doc. 230-1 at 9).  Thus, because the Court of Appeals already determined, on

direct appeal, that the Government did not breach a duty to correct materially false testimony, *i.e.*, engage in prosecutorial misconduct, the Court need not relitigate this question on collateral review.  *See DeRewal*, 10 F.3d 100 at 105 (stating, "[m]any cases have held that Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal'.");   *Nicholas*, 759 F.2d at 1075 (explaining that a section 2255 petition may not "be used to relitigate matters decided adversely on appeal"); *Johnson*, 1997 WL 2658, at *1 (denying a certificate of appealability because "[w]e cannot again review this claim simply because it has been recast in the clothing of an ineffective assistance of counsel claim"); *Kelly*, 2019 WL 3426077, at *5 (concluding that because the defendant was "again challenging the validity of the grand jury and wiretaps in his § 2255 motion (albeit sometimes styled as ineffective assistance of counsel claims)," after "the court of appeals rejected [the defendant's] challenges to the grand jury and wiretaps, this court will not address them").

Second, to the extent Defendant's Fifth Amendment prosecutorial misconduct claim should be reviewed by this Court on collateral review, for the following reasons, the Court finds that Defendant has not established that Special Agent's Kirley's "not directly" testimony was false testimony.

Defendant's prosecutorial misconduct argument is solely based on Washington's testimony that when he sold cocaine to Special Agent Patterson on February 16, 2018, Defendant "had nothing to do with it" (Doc. 221 at 73).  Simply stated, that Washington's testimony about the events of February 16, 2018, at the Hazel Bar, differs from Special Agent Kirley's "not directly" testimony, does not establish that Special Agent Kirley's "not directly" testimony was false, or that the Government knew or should have known that the testimony was false.  As

27

stated by the Court of Appeals in affirming this Court's judgment of conviction on Defendant's

direct appeal: "contradictory evidence presents a weight-of-the evidence question for the

jury . . . ."  (Doc. 230-1 at 9).

Indeed, the evidence of record supports that Special Agent Kirley's "not directly"

testimony was truthful/accurate.  As explained by the Court of Appeals in affirming this Court's

judgment of conviction on Defendant's direct appeal: "Following the objection [to Special Agent

Kirley's 'not directly' testimony], Kirley provided further context to his '[n]ot directly'

statement, explaining how he witnessed Washington approach Patterson and – seemingly without

any introduction or other comment – hand him drugs.  This supports an inference that Potter

communicated to Washington that he should sell cocaine to Patterson," *i.e.*, on February 16,

2018, while Defendant did not physically deliver cocaine to Special Agent Patterson, he

effectuated the sale of the cocaine by Washington to Special Agent Patterson by communicating

to Washington that he should sell cocaine to Special Agent Patterson.

### C. Defendant's Sixth Amendment Ineffective Assistance Claim Based Upon the Government Engaging In Prosecutorial Misconduct

Defendant also asserts, summarily, without any further argument: "MR. POTTER WAS

DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

AS A RESULT OF COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTORIAL

MISCONDUCT COMMITTED AS OUTLINED IN GROUND TWO."  (Doc. 235 at 23).

Defendant's Sixth Amendment ineffective assistance of counsel claim fails because, as

determined above, Defendant's underlying Fifth Amendment prosecutorial misconduct claim is

without merit.  Accordingly, Defendant has not established, and cannot establish, either that:

(1) Attorney Mielnicki acted deficiently when he failed to raise a meritless prosecutorial

misconduct claim relative to Special Agent Kirley's "not directly" testimony at Defendant's trial;

or (2) Defendant was prejudiced at trial as a result of Attorney Mielnicki's failure to assert a meritless prosecutorial misconduct claim relative to Special Agent Kirley's "not directly" testimony.

**D. An Evidentiary Hearing is Not Necessary to Decide, and Deny, Defendant's Section 2255 Motion**

The Court further finds that the "motion, files and records, 'show conclusively that the movant is not entitled to relief,'" and thus, an evidentiary hearing is not necessary to decide Defendant's Section 2255 Motion. *See U.S. v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (explaining, a district court may summarily dismiss a Section 2255 motion without a hearing where the "motion, files and records, 'show conclusively that the movant is not entitled to relief'") (quoting *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)).

**E.  A Certificate of Appealability Shall Not Issue**

Finally, a court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner meets this burden by showing: (1) where a court has rejected the constitutional claim on the merits that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" or (2) "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, however, the Court finds that Defendant has not met his burden of making such a showing.  Thus, a certificate of appealability will not issue.

## IV.    CONCLUSION

For all of the above stated reasons, Defendant has not established either that:

(1)  Defendant's trial counsel, Attorney Mielnicki, rendered ineffective assistance of counsel, in violation of Defendant's rights under the Sixth Amendment to the United States Constitution; or (2) the Government engaged in prosecutorial misconduct, in violation of Defendant's rights under the Fifth Amendment to the United States Constitution.  Accordingly, Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 234) is DENIED.

Further, for the above stated reason, a certificate of appealability shall not issue.

An appropriate Order follows.


SO ORDERED this 14th day of February, 2023.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge




cc:    All ECF Registered Counsel of Record

Taurean Potter
USMS 08463-068
FCI McKean
Inmate Mail/Parcels
P.O. Box 8000
Bradford, PA 16701